Judge Harris and I are pleased to have Judge Donny Coggins from Spartanburg, South Carolina, United States District Judge, sitting with us by designation. So, we'll begin with the first argument, Ms. Peroni. May it please the Court. Eduardo Rodriguez-Arias fears torture by three different groups in El Salvador. He fears torture by gangs, he fears torture by vigilante groups, and he fears torture by the police. Mr. Rodriguez has been removed to El Salvador, and every day there presents a new fear of harm to him. The immigration judge, the agency in this case, made multiple errors in considering his case. The principal error is that the agency failed to aggregate the different sources of torture in this case. As stated earlier, Mr. Rodriguez fears torture by three different groups. When considered cumulatively in the aggregate, Mr. Rodriguez meets his burden of proof. Which is more likely than not. Yes, Your Honor, it's more likely than not that he will be tortured in El Salvador. In addition, Your Honor, the immigration judge erred by limiting her review on remand to just the issues raised by the Board of Immigration Appeals. The purpose of a remand is for a review of all issues, unless specifically reserved by the Board. In this case, the Board did not reserve issues, it did not reserve jurisdiction, and the immigration judge had the authority to review all issues, and in fact should have reviewed all issues on remand. I don't understand sort of your practical concern with the process that the IJ used here. When the BIA reviewed the immigration judge's decision, it reviewed both parts, so what is the problem? Well, the problem is, Your Honor, with the separated review, or because the IJ didn't consider all issues on remand, they could not have aggregated the sources of torture. So it dovetails with your more subjective argument. It does, Your Honor. The way we know that there was no aggregation, that the second one didn't even consider. That's right, Your Honor. Okay. Which of the three groups did the IJ not consider? Your Honor, the issue isn't necessarily that he didn't consider all the groups, he didn't consider them cumulatively. So he considered separately the fear of torture by the gangs, and then separately the fear of torture by vigilante groups in the separate decision, the supplemental decision, and then separately the fear of torture by police. So it's possible, for example, Your Honor, that there could be a 40 percent chance of fear of torture or of likelihood of torture by the gangs, 40 percent by the police, and maybe 20 percent by vigilante groups. And when you accumulate this likelihood of torture together, that brings you to the more likely than not standard, over 50 percent. And that's the problem with this case is that the immigration judge looked at these different sources of torture individually and did not accumulate the likelihood of torture in this case. And I know there's a lot of case law holding you're supposed to do accumulatively, and I don't even really understand the government to be contesting that. That's right, Your Honor. Rather, they seem to be saying it doesn't matter in this case, because even if the IJ got that part wrong as to government acquiescence, there's sort of a solid finding, and we can just affirm on that basis. I would disagree with that, Your Honor. There is not a solid finding of acquiescence in this case. I think this is also where kind of the bifurcated process affects that as well. So you have the principal decision and the supplemental decision. You have effectively two different standards or two iterations of the standard for acquiescence across the two different decisions. So in the first decision, there's just a very kind of summary statement of the standard of cat relief, that you have to show it's more likely than not that you will feel torture or that you will be tortured if returned to your country with the acquiescence of the government. In the second supplemental decision, there is a more detailed iteration or explanation of what acquiescence is. And I guess the government and I will probably disagree about this, but I still maintain that they relied improperly on matter of SV. They cite to it, I think, 139 and 140 in the analysis. But nevertheless, it would seem to me that there's really two different statements of the standard. There's one in the supplemental decision, which is a more lengthy statement of what the standard of acquiescence is. And in the principal or in the first decision, there's just a very summary statement of what the standard is. And then with regard specifically to the likelihood of police torture, there's just a conclusion. It's just a one-sentence conclusion that says, Mr. Rodriguez will likely not be tortured by other gangs with the acquiescence of the police in El Salvador. And that's confusing, right? Because with police, you don't need acquiescence because the police are the state. So I actually find it very hard to parse out which part of what the IJ was saying went to the likelihood that there would be the infliction of severe pain and which part went to the state culpability factor. And it was particularly confusing to me because when it comes to police, it's only one factor. Is there a way to kind of separate out those two things, or is the IJ treating them more? Like when it came to the vigilante group, I thought all we had was sort of a bottom-line conclusion. It is not more likely than not that the petitioner will be tortured with the acquiescence by the state. I mean, I don't know which part of that had to do with the likelihood of torture and which part had to do with acquiescence. Right. I think that's specifically with regard to gangs. And so in the vigilante groups, there is kind of a long – it's the second decision, right, that addresses vigilante groups. But I agree that it is – it's a very similar, conclusive statement of what acquiescence is. And I think it does make a difference when you have a case where you're talking about torture by the police, that the police themselves are engaging in torture, as opposed to a different case where you're talking about police acquiescence exclusively to third-party torture. So I think that would be a different case. I think in this case, when you look at each torture individualized, I think you miss, in effect, the proper review of acquiescence. Because I think, you know, for example in – well, for one example, in discussing acquiescence, the – in the supplemental decision, the IJ states that – it states essentially that Mr. Rodriguez has legitimate fears that he will be tortured by the vigilante groups as part of a nationwide crackdown, which seems pretty close to acquiescence or seems to at least involve some national policy there. And then I think when you put that together with the likelihood that, for example, in what Jennifer Knapp, the expert, talks about, that the common practice of returning gang members to rival gang territory by the police – so this is, again, the police are involved in potential torture with rival gang members, or not involved, but they're returning people to rival gang members for the – where they might be tortured. And then the police are engaged in torture also. When you consider all those things together, I think that really brings you a stronger case towards acquiescence, as opposed to if you consider them each individually as their own kind of – I think it was the Ninth Circuit talks about as like individual cat claims, separately individual cat claims. I don't think you get really the sense of what – of – If you have a government that is obviously dealing with issues of corruption and lawlessness, in your estimation, how much does the government have to do to demonstrate that it does not have a policy of acquiescence, that it is not acquiescing in these actions of what could be characterized as rogue police? Well, first I would say that's not what we're talking about in this case, in terms of we're not talking about rogue police officers. I think the evidence is pretty strong that there is a practice of, or at least a pattern of torture by the police themselves in this case. I would point – again, I would point to the regulations, and the regulations say that it is acquiescence by a public official that we're looking at. And when a public official breaches their obligation to protect, then you're potentially looking at acquiescence in that case. If the government certainly is effective in combating or holding people accountable, then I think certainly that would go into the totality of the evidence that you would consider in considering whether or not torture exists. But I think you look to – and I think this court, at least in Zelaya, has held – that you look to government responsibility, and that responsibility includes the responsibility of government officials to uphold their obligations to protect. Your Honors, and so I think also in this case, by doing – kind of bifurcating the two decisions in this case, I don't think the immigration judge effectively looked at the other evidence of torture, and particularly the expert evidence. I note in this case that in the second decision, the immigration judge seems to dismiss or discount some of the expert evidence because he says or she says it's a broad categorization. And that's inaccurate. This court has consistently held that in order for the agency to discount or disregard expert evidence, it has to provide a cogent reason to do so. In this case, we have the testimony of Jennifer Knapp. She testifies she was subject to cross-examination, and her experience was not a broad categorization of harm in El Salvador. It was a lived experience. It was a personal experience. She talks very specifically about specific instances of individuals who were harmed that she knew that she worked with. She talks, for example, about the case of an individual who was stopped by the police in a grocery store. He was stopped coming out of the store. He was made to reveal his tattoos. He was a former gang member. Then he was taken to a site. He was tortured for four hours. And then he was left unconscious in rival gang territory after having his shirt removed so that his tattoos could be revealed to the rival gangs. So that is very much not a broad categorization. That's a very much a specific kind of particular experienced or at least individualized evidence of torture in El Salvador. So I think when the immigration judge disregarded or discounted that evidence, that was without cogent reason. I'm going to reserve the rest of my time if there's any other questions. Thank you. Good luck. Ms. Carter. Good morning. May it please the Court, Margo Carter of the United States Attorney General. What we have here is a petitioner who is seeking protection under the Convention Against Torture based on his former membership in a gang that he joined in the United States. At the end of the day, this is an evidence-based inquiry. Isn't there a legal question? I am interested in the government's position. The petitioner is arguing that the IJ made a mistake because instead of considering these three possible sources of torture cumulatively, the IJ kind of siloed them out and said no one of them goes beyond 50%. Does the government think that the IJ got that right or has there been a mistake here? I think that the immigration judge considered all of the possible evidence of torture and made a decision, the supplemental decision, was inclusive. Where would I find that? Where does the IJ say I'm adding these three together? The immigration judge doesn't explicitly say that, does not explicitly. Do you think we should break with the third in the Ninth Circuit and say that this was the appropriate analysis? This was the appropriate analysis in this case because even assuming that there was some sort of error in the immigration judge's bifurcation. What is your position? What is the government's position as to whether there was an error in this bifurcation? There was no error in the bifurcation. So you want us to split with the third in the Ninth Circuit? No, Your Honor. I think that the immigration judge in this case properly considered all evidence relevant to the possibility of torture. I just am asking you, is the government's position that the IJ in a case like this, forget this case, shouldn't IJ consider the three possible sources of torture cumulatively? Cumulatively. Okay. Yes, Your Honor. We're on the same page on that. Okay. So you agree with the third in the Ninth Circuit? Yes. Thank you. The evidence of, and that's in our brief to this court, I believe, and it's also in the regulations. And I think there's a published board decision that says that the evidence of torture does have to be evaluated cumulatively. Okay. So there was a, and we agree, I think, that the IJ didn't do that here. I think that's where we disagree, because I think that our position is that the immigration judge did consider all three possible sources of torture. Together. Together. And by incorporating. Where do I find that part? Because I have searched the IJ opinions and I can't find it. So in the immigration judge's decision, the immigration judge incorporates by reference the previous decision, which referred to the other two sources of torture. And three times in the immigration judge's decision, the immigration judge refers to the fact that she is considering all evidence relevant to the possibility of torture. Right. But she never says sort of the crucial thing. It's exactly like the cases in the Third and Ninth Circuit, where I'm considering together the chances that there will be torture at the hands of the police, at the hands of the gangs, and at the hands of the vigilante. Well, even to the extent that, if the court were to find some sort of error in the immigration judge's bifurcation of those two decisions, if you look to the decision. Not the two decisions. The three possible. Sorry. The three possible sources for harm. If you look at the Board of Immigration Appeals decision in this case, the board had before it all evidence relating to the possibility of torture, including an argument from petitioner regarding this aggregation point. And so the board of immigration appeals, to the extent that you find any error in the immigration judge's breaking out of these groups, the board had the opportunity to consider. Did it? Yes. The petitioner raised below the issue of aggregation, and that is in their brief to. I know it was raised, but I didn't have the BIA saying I'm considering all three together. The board issued a matter of Burbano adoption and affirmance of the immigration judge's decision. And so they took on board all of the immigration judge's reasoning and ultimately concluded that the reasoning was wrong. Is there, I mean, this is, if there is a part where the BIA says, although the IJ bifurcated it, we're looking at it. The board of immigration appeals does not explicitly say that there was bifurcation below the third. Why shouldn't we use this case as a vehicle to adopt the third and ninth circuit's approach and tell the BIA and the IJs that when you write an opinion, that you should use a magical word like you considered it in the aggregated or you considered it cumulative? Why shouldn't we do that? Well, I mean, I think that in this particular case, the board and the immigration judge did say that they considered all evidence relevant to the possibility of torture. And at the end of the day, this is a substantial... But isn't that different than specifically weighing it and considering it cumulatively? I can say I considered all evidence,  as someone mentioned a while ago, then I'm looking at the depth of evidence in each silo. I'm not looking at the total amount of brain that I have together. And I think that there's a real point to be made here that there's nothing in either opinion, either the IJ or the board opinion, that tells us specifically they weighed the evidence that way. Isn't that right? I think that they don't explicitly say that, but the absence of magic words doesn't take away from the fact that they had before them all evidence of this and that they used the criteria. And I understand that. I understand that's your argument. And they did have it before them. But they never gave us anything in either decision, either in the IJ decisions or the board decisions, that specifically says we looked at all of the evidence, whether it's threat from gangs, threats from vigilante groups, threats from the police, and considered that in the aggregate. That's just not there. I mean, I think that when you take those two decisions together, it is there in the aggregate, and that the board had an opportunity to look at both of those decisions. The board had all of the evidence before it and all of these claims and then had the opportunity to consider them and rectify any perceived error in the sort of separate silos, as you refer to it, and ultimately concluded that he didn't meet his burden of proof. He didn't show that it was more likely than not. Wouldn't it be simpler for litigants and counsel just to have a bright-line rule that says it needs to be considered cumulatively and that's set out in the opinion? I mean, I think that they cited the regulations and their own precedent, as we do in our brief to this court, that talk about how you consider the evidence cumulatively. But in any event, there are two independent as positive bases for the board's decision. And both of them are substantial evidence inquiries where the petitioner would have to establish that the record compels a conclusion in his favor. That's what you do when the petitioner is trying to overcome the compel standard. The petitioner is trying to show that an IJ or BIA finding was incorrect, but the whole problem here is that, at least according to the petitioner, there is no finding, so I don't see why that's the standard. I mean, I think that there is a finding that the evidence in this case was considered by the immigration judge. The immigration judge considered the evidence relating to possible torture by gangs, by vigilante groups, and by police, and concluded that, as a whole, it didn't get you over 50%. It's not that the immigration judge concluded that in each one. The immigration judge broke it out as a matter of how the immigration judge organized her decision. But the sum conclusion was, after analyzing each one of these threats separately, because they're all separate threats with separate evidence that goes to whether or not those threats would result in torture, the immigration judge analyzed each one of those threats separately and then reached the ultimate conclusion that the petitioner in this case was not entitled to protection and didn't meet his burden of proof. And that was the way that the immigration judge put these all together without necessarily using explicit magic words. But the sum conclusion was, I've looked at all of the evidence, and it's not the case that you more likely than not face this risk. And to the extent that we are arguing that there was no error in that decision, the record also doesn't compel the conclusion that no reasonable fact finder could fail to find in the petitioner's favor. But just help me out. So just assume for a second, hypothetically, I think they applied the wrong legal approach. So then I'd be thinking of it more from a harmless error kind of framework. And I guess what troubles me is that this isn't a case where the IJ just said, look, you're at zero on all of this stuff. These are implausible concerns. The IJ said there are cases where police torture suspected gang members and that Rodriguez had a reasonable fear of torture at the hands of vigilante groups. It's not like there was nothing here. So that makes me nervous about trying to kind of fix this on the assumption that even if it were aggregated, you would still come up under 50%. I think that we don't dispute in our brief that there may be some risk of harm, that that is contemplated by the immigration judge and by the board as well. I think that the issue is more that when it comes down to a fact-based inquiry, that the record just doesn't compel the conclusion that the harm that he faces, more likely than not, in El Salvador is torture, where he had his expert witnesses testify to a range of possible harms that he might face, including social stigma, including harm falling far short of the extremely egregious harm that would be torture. And while there are anecdotes in the record that are horrific to read, they are not to be read in isolation. They are sort of single incidents, and that doesn't compel the conclusion that this particular petitioner himself faces a threat of harm in El Salvador more likely than not. Not just a threat of harm, but a threat of torture more likely than not on the basis of his gang tattoos. And there was also a separate independent dispositive basis beyond just the more likely than not torture finding, which was the finding on acquiescence. And the immigration judge and the board found that the petitioner failed to demonstrate that it was more likely than not that the Salvadoran government would acquiesce in his torture, given the numerous steps that the Salvadoran government had taken to combat police corruption, gang violence, and other harms that the petitioner is citing. And this I also had trouble with, and I was asking your colleague about this too. This just seems very confusing to me. So the IJ makes the finding as to gangs that almost seems to assume there might well be torture, but not more likely than not that there would be acquiescence. And then as to the police, you don't need acquiescence because they're state actors, but she says it's just not more likely than not that it's going to happen at all. And so I'm trying to figure out if you add those two things together, how do I know it's not over 50%? Do you know what I'm saying? I mean, I think I understand what you're saying. I think that that again goes to the sort of fact-based nature of this inquiry, though, that if you could see the facts two ways, that doesn't mean petitioner wins. If you can see the facts two ways. And I agree. I mean, I certainly understand what you're saying. If there had been ñ I guess I'm sort of asking you to start from the assumption that maybe there's been a legal error here, so I'm thinking of this more in terms of harmless error. I understand if there's no legal error, the standard is does the record can tell the opposite finding? Right. No. But I'm trying to figure out ñ I read your brief as saying something slightly different, which was even if there was a legal problem here, you could affirm anyway. You could be confident it didn't make any difference because of this acquiescence thing, and that's the part I'm having trouble with. Well, I think that the acquiescence in this case, there's substantial evidence in the record that suggests that the government of El Salvador is taking steps to combat this corruption, and they've tried legislation. They've tried a truce between the gangs. They've tried various measures that have not been ñ that have been varyingly successful. But I think that that goes to whether or not the petitioner has shown any evidence that compels a conclusion in his favor, and he has not. Which is not to say that there isn't evidence of some occasions on which the government, or as you pointed out, the police, have either turned a blind eye or have engaged in bad conduct. But that's not the standard. The standard is whether or not the government is acquiescing, whether they're willing to take steps to prevent these kinds of harms from happening. In addition, the chain of events that the petitioner presents is speculative. It depends on if he's approached by police, and if he's imprisoned, or if his tattoos are seen and scrutinized and recognized as rival gang tattoos, and if the police do ultimately use violence. And given the speculative nature of the claim, this lends further support to the immigration judge and board's decisions that he just ñ But they also had expert testimony to record it. Now, this is the real deal. It's not here. It's really what's going on. Well, I think the expert testimony certainly gave support to his claim. But whether or not that expert testimony is enough to establish that the record compels a conclusion in his favor, when, again, there are these two independently dispositive prongs of the agency's decision, one based on the likelihood of torture and one based on government acquiescence, to say that although there's some evidence, including evidence from expert witnesses that's persuasive, that may not be ñ that isn't enough to show that the record compels a conclusion in favor of the petitioner. And to the extent that you wanted to return to the aggregation of evidence point, the immigration judge did discuss all relevant evidence and how she was considering all relevant evidence. And that's on pages 123 and 125 of the record. And, again, the board had before it all the relevant information, including the immigration judge's decision but also the petitioner's argument that the information wasn't considered cumulatively. And so, ultimately, the board issued a decision that addressed in broad terms the overall risk of torture that the petitioner faces without breaking it down separately. And if the court has nothing further... Thank you very much. Thank you. Mr. Ferola, you have some time. And while you're coming to the bench, why don't you start out by discussing the substantial evidence issue? Sure, Your Honor. Your Honor, I don't think this is necessarily a matter of substantial evidence. We certainly made that argument. We made that argument in the alternative. We think this is a legal issue and a legal argument, and I do not think this is a matter of harmless error. But in terms of the substantial evidence, I think there is compelling evidence on the record that the agency did not properly consider that would demonstrate, and I think in a compelling way, that, in fact, Mr. Rodriguez-Arias has met his burden of proof. I would just point that Mr. Rodriguez-Arias testified credibly. So this Court has held in previous cases that credible testimony alone potentially could meet somebody's burden of proof. He testified of his own threats of harm to him and what he thinks would happen to him if returned to El Salvador, and he also testified about how a similarly situated individual that he knows who was recently removed to El Salvador and then was killed shortly after arriving in El Salvador. So he has his credible testimony. He then corroborated that with considerable country report evidence and three, four expert witnesses, or at least declarations from four expert witnesses, and one who testified, subject to cross-examination, that, in fact, Mr. Rodriguez faces the likelihood of torture if returned to El Salvador because of his tattoos, his former gang affiliation. He would be identified as either a rival to the gangs or as a gang member by the police and vigilante groups and then faces a more likely-than-not chance of being tortured if removed. So we think he does satisfy his burden of proof. We think the evidence is compelling. Nevertheless, it's really an alternative argument for us, our principal argument is a legal argument, and it's that the IJ and the agency did not properly consider the evidence, did not consider it, did not accumulate the evidence when considering it, that I think in this case it's hard to really know what the standard of acquiescence is across the two different decisions. So in the second decision, as I stated earlier, in the supplemental decision, we have one iteration of acquiescence. We really don't know what the definition of acquiescence is in the first decision. The IJ doesn't really articulate it. I think also in this case my colleague talked about incorporating the two decisions. I think that's difficult in this case where, for example, well, to be specific, the IJ said that she's incorporating the relevant parts of the previous decision, doesn't specifically tell us what those relevant parts are, and again in this case we have a situation where, in effect, the IJ states her standard or makes an explanation of the standard in the second decision, and then we're supposed to kind of apply it retroactively to the first decision. So it kind of doesn't fit that way. So if we agree with you on the aggregation issue, you don't have to really get to the supplemental argument you made. I don't think so. I think it goes again, Your Honor. I think it may go to, it may fall into the harmless error issue. I mean, and I think, as the bench mentioned, this is not a case where there's nothing presented. We have a lot of strong evidence that talks about what would happen to Mr. Rodriguez-Arias, and we also have the IJ acknowledging that there is a real chance that he will be harmed if returned, that he has serious fears of harm. So I think in terms of a harmless error issue, it's not a harmless error. That is a significant error with real impact to Mr. Rodriguez's case. And, Your Honor, I don't think it's a matter of magical words either. I think the IJ very specifically said what she was going to do in her second decision, and she said she's limiting her review to the issue of torture by vigilante groups. She titled the subheading torture by vigilante groups, and then that's really what she talked about throughout that section. So I think it's clear what the IJ was doing in the case, and it's not really a matter of magical words. All right. Thank you very much.
judges: Henry F. Floyd, Pamela A. Harris, Donald C. Coggins Jr.